**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROGER J. FERGUSON and MICHAEL J. TOMANA,**<br>**Plaintiff,**<br><br>**v**<br><br>**JOHN J. MOELLER, MEGAN KRESS, KIMBERLY A. CONNELL and GREGORY C. CONNELL,**<br>**Defendants.** | ) | **2:16-cv-41** |

**MEMORANDUM OPINION AND ORDER OF COURT**

Now pending before the Court is a MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE (9), RULE 12(b)(6) AND RULE 12(f) FILED ON BEHALF OF DEFENDANT JOHN J. MOELLER (ECF No. 14), with brief in support. Plaintiffs Roger Ferguson and Michael Tomana have filed a response in opposition to the motion (ECF No. 21) and it is ripe for disposition.

Factual and Procedural History

This is a RICO case arising out of alleged fraudulent sales of Civil War memorabilia. In resolving the instant motion, the Court has considered the facts set forth in the 33-page Complaint (ECF No. 1) and the 36-page RICO Case Statement (ECF No. 9). *See Glessner v. Kenny*, 952 F.2d 702, 712 n. 9 (3d Cir. 1991) ("Courts may consider the RICO case statements in assessing whether plaintiffs' RICO claims should be dismissed."), *overruled on other grounds by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co*., 46 F.3d 258, 260 (3d Cir. 1995).

Plaintiffs are "experienced and knowledgeable collectors" of historical artifacts, with a particular interest in Civil War items. Complaint ¶ 43, 44. Defendant Moeller operates John's Trading Post, a resale shop in Canonsburg, Pennsylvania. Also named as Defendants are

Gregory Connell, Kimberly Connell (his wife) and Megan Kress (Kimberly's daughter and Gregory's step-daughter) (collectively, the "Connell Defendants").

Robert G. Connell (Gregory's father) owned a home and private museum located at 2782 Locust Drive in Peters Township, Pennsylvania, at which he maintained a unique collection of Civil War artifacts he had compiled over forty years. Prior to 2008, Robert Connell moved out of the home at 2782 Locust Drive and permitted the Connell Defendants to live there. The Complaint alleges that from 2008-2012, the Connell Defendants looted Robert Connell's private museum and gave Moeller access to take artifacts from the collection. Allegedly, Cress and Kimberly Connell needed money to support their drug habits. Complaint ¶¶ 28, 33. Moeller paid the Connell Defendants a fraction of what the artifacts were worth and then resold them. Moeller altered some of the items to increase their apparent value; for example, by hiring an engraver to add fraudulent engraving to indicate ownership by famous figures and by creating fraudulent provenance documents. Moeller sold these stolen artifacts to the general public through many channels, including John's Trading Post, Jack's flea market, on consignment, the internet, and at gun shows.

Over the course of several years, Moeller sold some of the stolen artifacts to Plaintiffs, in more than 25 separate transactions totaling some $670,000. In connection with these transactions, Ferguson travelled from his homes in Florida or Tennessee eight times and wired money from his Florida bank account to Tomana in Pennsylvania. Tomana then used cash to purchase items from Moeller. Moeller concealed the underlying thefts by preparing a false affidavit for signature by Megan Kress which indicated that Robert Connell had died and that Megan was the executor of the estate, by forging purported original receipts, and by obtaining a statement from the Canonsburg Police Department that they had not received any reports of

stolen Civil War artifacts. Plaintiffs also purchased numerous items from Moeller with which the Connell Defendants had no involvement, but which Moeller falsely represented were part of the Robert Connell collection. Although the Complaint conclusorily alleges that "Defendants" engaged in the above activities, the specific interactions with Plaintiffs were performed solely by Moeller.[1]

Plaintiffs planned to sell their collection at an online auction on November 10, 2012. Moeller assisted Plaintiffs in preparing for the auction, including publication of an auction catalog. In addition to stolen artifacts that Moeller had sold to Plaintiffs, the catalog contained other items stolen from the Robert Connell collection that Moeller had not sold to Plaintiffs, and items that Moeller had obtained from other sources. The catalog was distributed by United States mail across state lines to collectors, investors and other potential buyers and was available on the Roan Auction internet site. Plaintiffs also placed advertisements for the auction in publications with national and international circulation.

Prior to the auction, Plaintiffs were notified that many of the items listed for auction had been stolen from Robert Connell. The auction was immediately cancelled. Plaintiffs were permitted by law enforcement to retain possession of the items. However, they allege that they have incurred well over one million dollars ($1,000,000.00) in damages. On July 1, 2015, Moeller pled nolo contendere to a charge of receiving stolen property.

The Complaint asserts the following claims against all Defendants: (Count I) – Civil RICO, pursuant to 18 U.S.C. §§ 1962(c); (Count II) – Conspiracy to Commit Civil RICO; and (Count III) –Fraud. In addition, the Complaint asserts pendant state law claims against Moeller for Breach of Contract (Count IV); Unjust Enrichment (Count V); and Negligent

[1] The only possible contact pled was that Kress and Kimberly Connell (along with several prominent Washington County officials) observed negotiations between Plaintiffs and Moeller at John's Trading Post. Complaint ¶ 61.

Misrepresentation. There is not complete diversity of citizenship between the parties because Plaintiff Tomana and Defendants are citizens of Pennsylvania.

Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step

approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See*

*Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Where, as here, Plaintiffs assert fraud-related predicate acts to support a RICO claim, the pleading must meet the particularity standard set forth in Fed. R. Civ. P. 9(b). *Zavala v. Wal-Mart Stores, Inc*., 393 F. Supp. 2d 295, 312 (D.N.J. 2005), *aff'd* 691 F.3d 527 (3d Cir. 2012). They may meet this requirement by pleading the "date, place or time" or by "injecting precision and some measure of substantiation into their allegations." *Lum v. Bank of Am*., 361 F.3d 217, 224 (3d Cir. 2004).

Legal Analysis

The Court will first address the RICO claims in Counts I and II over which it has original jurisdiction. The RICO statute, 18 U.S.C. § 1962, provides in relevant part as follows:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or

> indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

A. RICO Section 1962(b) Theory

The key feature of a RICO § 1962(b) theory is that Defendants engaged in racketeering to acquire control over an enterprise. As explained in *Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 485 (E.D. Pa. 2014):

> to state a cause of action under this section, a plaintiff must allege: (1) defendant has an interest in an enterprise; (2) defendant gained or maintained that interest through a pattern of racketeering; and (3) the enterprise affects interstate commerce. "It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise." *Cottman Transmission Sys., LLC v. Kershner*, 536 F.Supp.2d 543, 560 (E.D. Pa. 2008). Additionally, a plaintiff "must show injury from the defendant's acquisition or control of an interest" of the enterprise via racketeering activities. *Lightning Lube*, 4 F.3d at 1190.

This theory was not explicitly pled in Plaintiffs' Complaint[2] and can be dismissed rather summarily. The "enterprise," as defined in the RICO Case Statement, is merely an informal association in fact among Defendants. Because there is no separate, identifiable "enterprise," the Complaint fails to plead the nature of Defendants' interest in the enterprise, or that they gained/maintained that interest through a pattern of racketeering. Similarly, Plaintiffs failed to plead how their injury resulted from Defendants' control over the "enterprise," rather than from the underlying alleged racketeering activity. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (holding that a RICO § 1962(b) claim cannot merely parrot a §

[2] Section 1962(b) was referenced as a liability theory in the RICO Case Statement ¶ 12.

1962(c) claim, but instead requires the assertion of an injury independent from that caused by the pattern of racketeering). In summary, Plaintiffs have failed to plead a cognizable § 1962(b) claim.

B. RICO Section 1962(c) Theory

The elements of a civil RICO claim under section 1962(c) are: (1) the conducting of (2) an enterprise (3) through a pattern, (4) of racketeering activity (5) which results in injury to the plaintiffs' business or property. *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985). Each of these elements is further defined in the statute and/or case law.

1. "Conducting"

A person cannot be held liable under § 1962(c) unless he/she has participated in the operation or management of the RICO enterprise itself. Plaintiff must show that each Defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Irish v. Ferguson*, 970 F. Supp. 2d 317, 345 (M.D. Pa. 2013) (*quoting Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (emphasis in original). The verb "conduct" means "to lead, run, manage, or direct." *Reves*, 507 U.S. at 177.

2. "Enterprise"

RICO defines an "enterprise" broadly as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In *Boyle v. United States*, 556 U.S. 938, 948 (2009), the Supreme Court described the flexible scope of an "association in fact" enterprise:

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times.

> The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

However, the existence of an enterprise is an element distinct from the pattern of racketeering activity and "proof of one does not necessarily establish the other." *Id.* at 947. An association in fact enterprise must possess at least three structural features: "a purpose, relationships among those associated in the enterprise, and longevity sufficient to permit these associations to pursue the enterprise's purpose." *In Re Ins. Brokerage Antitrust Lit*., 618 F.3d 300, 366 (3d Cir. 2010) (quoting *Boyle*).

In *United States v. Turkette*, 452 U.S. 576 (1981), the United States Supreme Court identified three characteristics of a RICO "enterprise." The first element requires proof of an "ongoing organization." *Id*. at 583. To satisfy this element, there must be some mechanism for controlling and directing the affairs of the group on an ongoing, rather than an ad hoc, basis. *Console*, 13 F.3d at 650-51.[3] The second element requires proof "that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583. To satisfy this element, each person must perform a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization." *Console*, 13 F.3d at 651. The third element demands proof that the enterprise is an "entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. As the *Console* Court explained: "it

---

[3] Recently, in *Goldenstein v. Repossessors Inc*., 2016 WL 909170 at *13 (3d Cir. March 10, 2016), the Court of Appeals for the Third Circuit declined to address whether the plaintiff had failed to prove the existence of a RICO enterprise because the defendants consisted of an ad hoc group that were connected solely for the purpose of performing the alleged predicate acts.

is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." 13 F.3d at 651-52.

In other words, "a viable § 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise.' " *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co*., 46 F.3d 258, 268 (3d Cir. 1995). In *In re Ins. Brokerage Antitrust Litig*., 2006 WL 2850607, at *17 (D.N.J. Oct. 3, 2006), the Court explained that a RICO claim cannot be pled "simply by alleging that the conduct of one aspect of Defendants' activities through fraud constitutes the racketeering activity." Instead, a plaintiff must demonstrate the existence of an "enterprise," functioning as an independent, free-standing association-in-fact, which "engages in a pattern of activity which differs from the usual and daily activities of its members." *Id*. The Court dismissed the RICO claim because Plaintiffs had not sufficiently averred that the alleged enterprise had an existence of its own, and performed functions other than the perpetration of the predicate racketeering acts. *Id*.; *Accord Parrino v. Swift*, 2006 WL 1722585, at *3 (D.N.J. June 19, 2006) (dismissing RICO claims where Plaintiffs had "alleged that the conspiracy to defraud was the same thing as the enterprise")).

In *Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 790 n.5 (3d Cir. 1984), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557, the Court noted that there is a distinction between pleading and proving the existence of an enterprise.[4] Nevertheless, *Seville* emphasized that a plaintiff must plead a distinct, separate "enterprise." The Court explained that by "limiting its allegations of conspiracy to the underlying offenses," plaintiff "affirmatively negated the existence of [ ] an enterprise separate and apart from the pattern of

[4] In *Seville* the alleged enterprises were composed of individuals and corporations, which could reasonably be assumed to have an organization structure, "not associations in fact." *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig*., 2006 WL 1531152, at *9 (E.D. Pa. June 2, 2006).

activity in which it engages."). *Id*. at 790 n. 5. *Accord In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2006 WL 1531152 at *8 ("Allegations demonstrating a conspiracy to perform an underlying criminal offense, standing alone, are not sufficient to allege the existence of an enterprise."). As the Court explained: "Several Courts of Appeals have rejected association in fact enterprise pleadings where the plaintiffs failed to allege any organizational structure for the enterprise." *Id*. (citations omitted). *Accord In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 369 (3d Cir. 2010) ("We find it significant, however, that *Seville* involved legal-entity enterprises, not associations in fact."); *But see Hollis-Arrington v. PHH Mortgage Corp*., 205 F. App'x 48, 53-54 (3d Cir. 2006) (non-precedential) (opining that the District Court mistakenly relied on the *Seville* footnote but holding that plaintiff had failed to plead a pattern of racketeering activity).

3. "Pattern"

The RICO statute defines a "pattern" of racketeering activity as requiring "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5); *Tabas v. Tabas*, 47 F.3d 1280, 1290 (3d Cir. 1995). In *H.J. Inc. v. Northwestern Bell Telephone Co*., the United States Supreme Court concluded that "to prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." 492 U.S. 229, 239 (1989). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240. In sum, a plaintiff must prove a "continuity of racketeering activity." *Id*.

The Court described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into

the future with a threat of repetition." *Id*. at 241. The clear implication of this language is that the ambit of RICO may encompass a "legitimate" businessman who regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and in the process commits predicate acts, for instance by using the postal service as a means of accomplishing his scheme. *Tabas*, 47 F.3d at 1293. In determining whether a pattern of continuity exists, courts have considered "factors such as the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck v. Fid. Union Bank/First Nat. State*, 832 F.2d 36, 39 (3d Cir. 1987). The parties disagree as to the application of the *Barticheck* factors to the facts and circumstances of this case.

4. "Racketeering Activity"

The RICO statute enumerates the specific federal offenses which constitute "racketeering activity." Because the RICO statute includes mail fraud and wire fraud as predicate acts, a RICO case can, in theory, be based on "garden variety" fraud. *Tabas*, 47 F.3d at 1290. However, RICO claims premised on mail or wire fraud, such as this one, must be "particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites (Puerto Rico), Inc*., 223 F.3d 12, 20 (1st Cir. 2000).

Plaintiffs must plead that Defendants committed predicate acts enumerated in the RICO statute. It is well-established that "common law fraud does not constitute a predicate act under RICO." *Bartlett v. Pennsylvania Blue Shield*, 2003 WL 21250587, at *3 n. 5 (E.D. Pa. Mar. 31, 2003); *see also Giuliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005) (rejecting RICO claim

based on allegations that may constitute fraud or other common law violations, but did not amount to a RICO predicate act because defendant did not utilize the mail or the wires).

5. "Causation"

To prevail on a civil RICO claim, Plaintiffs must establish that they suffered an injury that was caused by the RICO violation(s). *In re Husco, Inc*., 268 B.R. 441, 453 (Bankr. W.D. Pa. 2001). The RICO violation must also be the proximate cause of plaintiff's injury. *Id*. In applying this factor, the Supreme Court has focused primarily upon the directness of the relationship between the asserted injury and the injurious conduct alleged. *Holmes v. Securities Investor Protection Corp*., 503 U.S. 258, 267–69 (1992). A RICO plaintiff who complains of "harm flowing directly from the misfortunes visited upon a third person by the defendant's acts" may not recover under § 1964(c). *Id*.

6. Application to the Allegations in this case

RICO was intended by Congress to be a potent and flexible statute and the Supreme Court has instructed that it be read broadly. *Sedima*, 473 U.S. at 497; *Tabas*, 47 F.3d at 1290-91. Nevertheless, the RICO § 1962(c) theory set forth in this case has numerous fundamental shortcomings. It appears that Plaintiffs are attempting to bootstrap a common law fraud into a RICO violation.

Plaintiff defines the RICO scheme as Defendants' alleged plan "to steal, alter and sell Civil War and purported Civil War items to unsuspecting collectors and purchasers." RICO Case Statement ¶ 5(f). The enterprise is defined as "an association in fact" consisting of Moeller, the Connell Defendants, the unnamed engraver and unnamed sources of other Civil War antiquities sold to Plaintiffs. RICO Case Statement ¶ 6(a). There is a fundamental disconnect between the alleged Defendants, scheme and enterprise – which primarily focuses on the thefts

from the Connell Collection -- and the alleged pattern of racketeering activity -- which primarily consists of Plaintiff's own efforts to publicize the Roan auction.

There are no allegations regarding how each named Defendant conducted the affairs of the enterprise. To the contrary, it appears that the Connell Defendants merely permitted Moeller to steal artifacts from the Connell collection in exchange for drug money. In other words, Defendants seemingly were engaged in their own affairs, and in arm's length transactions with each other. Relatedly, the alleged "enterprise" is no more than a post-hoc invention of Plaintiffs' attorneys. There are no allegations regarding ongoing organization or decision-making, an actual role for each Defendant in a functional unit, or the existence of any activities beyond the alleged racketeering. Indeed, Plaintiffs concede in the RICO Case Statement that the "enterprise's sole purpose is reflected by the racketeering activity, and all of the enterprise's actions are related to the racketeering activity" and admit that the "activities of the enterprise and the pattern of racketeering are identical." However, aside from these vague legal conclusions, the only facts pled regarding a common purpose and relationship involved stealing artifacts from the Connell collection. None of the *Boyle* or *Turkette* elements have been satisfactorily pled.

Plaintiffs recognize that common law theft and fraud are not RICO predicate acts. Thus, in an effort to set forth a pattern of racketeering activity, the Complaint attempts to plead that Defendants committed the following predicate acts: (1) mail fraud; (2) wire fraud; (3) interstate use of monies obtained by fraud; (4) interstate transportation of victims of fraud; and monetary transactions in property derived from fraud, as more fully described in Complaint ¶¶ 90-94. It is striking that the vast majority of the predicate acts alleged in this case were performed by the Plaintiffs themselves, rather than by Defendants. To wit, the mail fraud and wire fraud predicate acts, as pled, consist of money wired by Ferguson, publicity regarding the Roan Auction (done

by Plaintiffs), phone calls and emails between Ferguson in Florida and Tamana in Pennsylvania, and travel by Ferguson). The shipments of more than $5000 across state lines were done by Ferguson to Tamana, who then used cash to purchase memorabilia from Moeller. *See* ECF No. 21-1 (itemizing wire transfers, internet sites, emails and telephone communications made by Ferguson and Tamana); RICO Case Statement. Plaintiffs cannot plead a cognizable RICO claim against Defendants based on their own actions. *See United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011) ("It is the 'person' charged with the racketeering offense—not the entire enterprise—who must engage in the 'pattern of racketeering activity.' ").

The remainder of the predicate acts, as pled, were performed by Moeller acting alone. It is entirely unclear how the alleged predicate acts were committed by the RICO "enterprise" (as defined in this case). To the contrary, it appears that Moeller acted unilaterally to defraud Plaintiffs after he obtained the artifacts from the Connell Defendants. In turn, it appears that Plaintiffs decided on their own to offer the artifacts for sale at the Roan auction. None of the alleged RICO predicate acts were performed by the Connell Defendants. As pled, the Connell Defendants appear to have engaged in numerous discrete acts of theft, entirely within the Commonwealth of Pennsylvania. It is well-established that theft, in and of itself, is not a RICO predicate act. *Annulli v. Panikkar*, 200 F.3d 189, 199 (3d Cir. 1999), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000) ("Theft by deception, like a simple breach of contract or intentional interference with contract, is not a predicate act of racketeering activity enumerated in § 1961(1).").

Finally, it is unclear how the alleged injuries were caused by the alleged pattern of racketeering activity. Plaintiffs were victimized by the initial common law theft and fraud. The alleged predicate acts associated with publicity for the Roan auction occurred <u>after</u> Plaintiffs had

paid $670,000 to Defendants, and thus, the RICO acts could not have caused those losses. Similarly, Plaintiffs cannot base their RICO theory on any prospective injuries that may have been suffered by potential purchasers at the Roan auction. *See Holmes*, 503 U.S. at 267-69.

In summary, the Court concludes that Plaintiffs have failed to plead a cognizable § 1962(c) claim and Count I of the Complaint will be dismissed.

C. 1962(d) Theory

RICO § 1962(d) creates a cause of action for conspiracy to violate RICO § 1962(a)-(c). To plead conspiracy in a RICO case, a complaint must set forth factual allegations that indicate 1) the period of the conspiracy, 2) its intended purpose, 3) the specific actions taken by the conspirators in furtherance of the conspiracy, 4) agreement to commit predicate acts, and 5) knowledge that the acts agreed upon formed part of a pattern of racketeering activity. *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir.1991), *citing Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir.1989). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient ... .[A]n inference of conspiracy from the Complaint is no substitute for the requirement that the circumstances of the conspiracy be pleaded with specificity." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (citations omitted). In addition, Plaintiffs must allege facts to show that each Defendant objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts. *Smith v. Jones, Gregg, Creehan & Gerace, LLP*, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008). Bare allegations of conspiracies described in general terms may be dismissed. *Id*.

In this case, the alleged RICO § 1962(d) conspiracy is conclusory and virtually identical to the alleged RICO § 1962(c) theory. There are no specific averments regarding the participation and agreement to join an alleged conspiracy as to each Defendant, nor any facts regarding an agreement to conduct a RICO enterprise through a pattern of predicate acts. Thus, for the reasons set forth above, Plaintiffs have failed to state a cognizable § 1962(d) claim and Count II of the Complaint will be dismissed.

D. Supplemental Jurisdiction Over State Law Claims

Jurisdiction over supplemental state law claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction," or if "in exceptional circumstances, there are compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3), (4). As to (c)(3), "the district court ***must*** decline to decide the pendant state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for [exercising supplemental jurisdiction]." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original). As to (c)(4), a court must evaluate "economy, convenience, fairness, and comity." *Mathis v. Camden County*, 2009 WL 4667094 at *9 (D.N.J. 2009).

For the reasons set forth above, Plaintiff has failed to plead cognizable RICO claims over which this Court has original jurisdiction. Therefore, the Court "must" decline to exercise supplemental jurisdiction over the pendant state law claims in Counts III-VI of the Complaint.

As this case is in its earliest pleading stage, the (c)(4) considerations also weigh in favor of declining supplemental jurisdiction.

E. Leave to Amend

Ordinarily, leave to amend should be liberally granted. Indeed, if a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *accord Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002).

Plaintiffs have requested leave to amend their Complaint. Although Moeller seeks dismissal with prejudice, he has not articulated any basis by which leave to amend should be deemed inequitable or futile. Accordingly, the Court will permit Plaintiffs one opportunity to file an Amended Complaint. However, the Court is unlikely to permit any subsequent amendments. Thus, if Plaintiffs choose to file an Amended Complaint, it will be critically important to address the shortcomings previously discussed to assure that the Amended Complaint contains sufficient factual allegations to render the RICO claim(s) plausible in compliance with the applicable pleading standard. If the Plaintiffs again assert state law claims, the Court will re-evaluate its supplemental jurisdiction as explained above and will determine whether or not such claims should be remanded to the state court.

F. Motion to Strike

Federal Rule of Civil Procedure 12(f) authorizes the Court to strike from a pleading any immaterial, impertinent or scandalous matter. Although the decision is discretionary, motions to

strike are viewed with disfavor and are not frequently granted. *Marin v. Sec'y of the Commonwealth of Pennsylvania*, 2016 WL 1023366, at *1 (M.D. Pa. Mar. 15, 2016).

Moeller asks the Court to strike the reference in the Complaint to his criminal history. As explained above, the original Complaint in this case has been dismissed. If Plaintiffs choose to file an Amended Complaint, they should exercise restraint in this regard. It may be relevant that Moeller is not legally authorized to possess a firearm because he was previously convicted of a felony. However, the exact nature of that underlying felony conviction would be immaterial, impertinent or scandalous. In accordance with the foregoing, the request to strike is **DENIED AS MOOT**.

An appropriate Order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER J. FERGUSON and MICHAEL J. TOMANA,** | ) | |
| **Plaintiff,** | ) | |
| **v** | ) | **2:16-cv-41** |
| **JOHN J. MOELLER, MEGAN KRESS, KIMBERLY A. CONNELL and GREGORY C. CONNELL,** | ) | |
| **Defendants.** | ) | |

**ORDER OF COURT**

AND NOW, this 22nd day of March 2016, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE (9), RULE 12(b)(6) AND RULE 12(f) FILED ON BEHALF OF DEFENDANT JOHN J. MOELLER (ECF No. 14) is **GRANTED IN PART**. Counts I and II of Plaintiffs' Complaint are **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Counts III, IV, V and VI of the Complaint.

On or before April 12, 2016, Plaintiffs shall file either: (1) an Amended Complaint; or (2) a notice of their intent to pursue the remaining counts of the original complaint in state court.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

**cc: All counsel of record**
Via CM/ECF